OPINION *Page 2 
{¶ 1} Appellant Brittini Taylor appeals the April 23, 2007, decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her daughter to Appellee Stark County Department of Job and Family Services ("SCDJFS").
 {¶ 2} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 3} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} The relevant facts leading to this appeal are as follows:
 {¶ 6} Appellant Brittini Taylor is the mother of Alexis Celano, born May 6, 2005. Nicholas Celano is the father.
 {¶ 7} The present case was initiated on May 11, 2005, due to the mother, Brittini Taylor, being a minor in the permanent custody of the SCDJFS at the time of Alexis' birth. *Page 3 
 {¶ 8} On May 12, 2005, the trial court held an emergency shelter care hearing wherein the trial court vested temporary custody with the SCDJFS. At that time, the trial court ordered genetic testing for the father.
 {¶ 9} On June 8, 2005, the trial court found Alexis Celano to be a dependent child and granted temporary custody to SCDJFS. The trial court adopted and approved a case plan for the parents. The Agency's case plan required both parents to complete a psychological evaluation and follow all recommendations and attend a parenting program. Appellant-Mother was to complete school and the Father was to establish paternity.
 {¶ 10} On April 6, 2006, the trial court held a Dispositional Review hearing. At said hearing, Appellant-Mother stipulated to the case plan and to SCDJFS's motion for Planned Permanent Living Arrangement (PPLA) for the Mother. The trial court granted the SCDJFS's motion for PPLA for the Mother.
 {¶ 11} On May 15, 2006, the trial court held another Dispositional Review hearing. At this hearing the trial court granted the Motion for PPLA as to the Father's interest. The trial court continued the PPLA for the Mother with the child.
 {¶ 12} On February 13, 2007, SCDJFS filed a Motion for Permanent Custody alleging permanent custody should be granted pursuant to R.C. § 2151.414(B)(1)(d), § 2151.414(e)(1)(4)(10)(14), and §2151.414(D)(1-5). The motion contained an explanation of the parents' rights and possible results of this proceeding.
 {¶ 13} The SCDJFS' Motion for Permanent Custody included in the case plan a specific plan of the Agency's action to seek an adoptive family for the child and prepare the child for adoption, as required by Ohio Revised Code § 2151.4123(D). *Page 4 
 {¶ 14} Appellant-Mother was AWOL from Agency care from December 21, 2006, until she was located in Ocala, Florida, on the weekend of February 10, 2007. Appellant was arrested for theft in Florida. She was returned to Ohio and remained in the care of SCDJFS until March 31, 2007, when she ran away from her placement.
 {¶ 15} On April 5, 2007, the trial court held a Permanent Custody hearing.
 {¶ 16} Appellant-Mother failed to appear and her whereabouts were unknown as of the hearing date.
 {¶ 17} The Father, Nicholas Celano, appeared for the permanent custody hearing on April 5, 2007. The Father waived his right to counsel for the hearing.
 {¶ 18} The Father informed the Court that he wished to stipulate to the granting of permanent custody of Alexis to the SCDJFS. The Father signed the proper stipulation form and presented it to the Court. The Court went over the form with the Father fully explaining what rights he was giving up and that permanent custody meant the severing of his rights to the child. After that explanation, the Father indicated he still wished to stipulate to the permanent custody.
 {¶ 19} The Court finds that the Father made a knowing and voluntary stipulation to the granting of permanent custody of Alexis to the SCDJFS.
 {¶ 20} On April 23, 2007, the trial court filed its Judgment Entry and written Findings of Fact and Conclusions of Law terminating Brittini Taylor's parental rights and granting permanent custody of Alexis Celano to SCDJFS.
 {¶ 21} Appellant now appeals and raises the following Assignments of Error: *Page 5 
 ASSIGNMENTS OF ERROR {¶ 22} "I. THE COURT'S ORDER STATING THAT ALEXIS CELANO COULD NOT BE PLACED WITH ANY BIOLOGICAL PARENT AT THE TIME OF TRIAL OR WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 23} "II. THE COURT'S ORDER STATING THAT IT WOULD BE IN THE BEST INTEREST OF ALEXIS CELANO THAT PERMANENT CUSTODY BE GRANTED WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE
 {¶ 24} "III. THE COURT'S DENIAL OF COUNSEL FOR MOTHER-APPELLANT'S MOTION TO CONTINUE THE PERMANENT CUSTODY TRIAL WAS AN ABUSE OF DISCRETION."
 I., II. {¶ 25} Because Mother's assignments of error are interrelated, we shall address them together. In her first assignment of error, Mother maintains the trial court's finding that Alexis cannot or should not be placed with her within a reasonable time was against the manifest weight of the evidence. In her second assignment of error, Mother asserts the trial court's finding that the best interest of Alexis would be served by granting permanent custody to the department was against the manifest weight of the evidence.
 {¶ 26} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. *Page 6 
 {¶ 27} Revised Code § 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 28} Following the hearing, R.C. § 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
 {¶ 29} "(a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 30} "(b) the child is abandoned;
 {¶ 31} "(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or
 {¶ 32} "(d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 33} Revised Code § 2151.414(B) thereby establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. *Page 7 
 {¶ 34} In the case sub judice, Appellant claims the trial court's judgment that Alexis cannot or should not be placed with her is against the manifest weight of the evidence.
 {¶ 35} However, upon review we find that the trial court's Judgment Entry stated that it was sustaining SCDJFS' Motion for Permanent Custody pursuant to R.C. § 2151.414(B)(1)(d), R.C. § 2151.414(E)(1)(4)(10) and (14), and R.C. § 2151.414(D)(1-5). The trial court did not cite R.C. § 2151.414(B)(1)(a), nor did it state in its Entry or Findings of Fact and Conclusions of Law that the child cannot be placed with either parent within a reasonable time. The trial court did, however, make a finding that Alexis had been in the temporary custody of SCDJFS for a period of time in excess of twelve of the prior twenty-two consecutive months. The trial court also made a finding that Appellant had abandoned the child by failing to visit or maintain contact with the child for more than ninety days.
 {¶ 36} As findings under R.C. § 2151.414(B)(1)(a) and R.C. §2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant SCDJFS' motion for permanent custody. In re Langford Children, Stark App. No. 2004CA00349,2005-Ohio-2304, at ¶ 17. Upon review, we agree with the trial court's finding that R.C. § 2151.414(B)(1)(d) is applicable to the facts of this case. We therefore conclude the trial court's finding with regard to this issue is not against the manifest weight or sufficiency of the evidence.
 {¶ 37} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. § 2151.414(D). These factors are as follows: *Page 8 
 {¶ 38} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 39} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 40} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 41} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 42} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 43} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 44} As stated above, Alexis had been in the custody of SCDJFS since May 11, 2005, that being twelve or more months of a consecutive twenty-two month period. *Page 9 
 {¶ 45} The trial court found that Appellant-Mother failed to complete her psychological evaluation, having walked out on the examiner before it was complete. The examiner did complete a report with what information she had that recommended Appellant-Mother attend counseling and a parenting class. The examiner diagnosed Appellant-Mother with Oppositional Defiant Disorder. Appellant-Mother refused to comply with counseling.
 {¶ 46} The record in the case sub judice reveals that Appellant had not visited the minor child since November, 2006, and that the child has not formed a strong bond with Appellant. (T. at 21). Appellant's caseworker further testified that Appellant is young and unable to meet even her own needs. Id. She further testified that Appellant does not have the resources to care for a child. Id. Additionally, she testified that the minor child was currently placed with a foster family who wish to adopt her. Id.
 {¶ 47} Additionally, the trial court found that Alexis has no developmental delays or medical conditions. She has no bond with either of her biological parents. She is currently placed in a foster to adopt home, is bonded to the foster parents and those foster parents have expressed a desire to adopt her. The Court further found that Alexis is an adoptable child and that she deserves to be in a stable, loving environment where she can thrive.
 {¶ 48} Based upon the foregoing, we find the trial court's finding it was in Alexis' best interest to grant permanent custody to the department was not against the manifest weight of the evidence.
 {¶ 49} Appellant's First and Second Assignments of Error are overruled. *Page 10 
 III. {¶ 50} In her third and final assignment of error, Appellant argues that the trial court erred in denying her counsel's motion for continuance. We disagree.
 {¶ 51} In the case at bar, when Appellant failed to show on the day of trial, Appellant's counsel requested a continuance. The trial court denied said motion.
 {¶ 52} The grant or denial of a continuance rests in the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65.
 {¶ 53} In order to find an abuse of discretion in the trial court's denial of a motion to continue, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 54} In the case sub judice, Appellant was represented by counsel and a guardian ad litem, both of whom were present for trial. Appellant's trial counsel indicated that he had had a meeting scheduled with appellant the day before and she had failed to show for that meeting. (T. at 7). In response, the Agency stated that this was not the first time that Appellant had been AWOL. (T. at 8). The Agency further stated that Appellant had been served with notice of the trial and that she knew what the hearing was going to entail. Id.
 {¶ 55} Appellant's carelessness in maintaining contact with her attorney and her failure to show at this hearing, do not provide grounds for this Court to conclude the trial court abused its discretion in denying the requested continuance. *Page 11 
 {¶ 56} Appellant's third assignment of error is overruled.
 {¶ 57} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
 Wise, P. J. Edwards, J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
 Costs assessed to appellant. *Page 1