OPINION
{¶ 1} Defendant-appellant, Theodore C. Dust, Jr., appeals from the judgment of the Willoughby Municipal Court denying his motion to suppress. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Based on the evidence presented at the suppression hearing, the trial court found that on February 20, 2005, at approximately 11:00 p.m., Officer Stephen Shum of the Wickliffe Police Department was dispatched to Lakeland Boulevard in Wickliffe, Ohio, to investigate a complaint of downed utility wires. Upon arrival, Officer Shum observed wires hanging in the roadway as the result of a utility pole being sheared at the base. A maroon Hyundai was located on the sidewalk a short distance from the fallen utility pole on the north side of Lakeland Boulevard, after having crashed into a small retaining wall, and a man, later identified as Dust, sitting behind the steering wheel of the vehicle. Officer Shum testified that when he approached the vehicle, he observed a large amount of blood flowing from a cut on Dust's nose, and summoned EMS. When speaking to Dust, Officer Shum noticed a "strong odor" of alcohol on his breath, bloodshot watery eyes, and a flushed complexion.
 {¶ 3} When EMS arrived, Dust was transferred to the rescue vehicle where he was treated for his injuries, and Officer Shum turned to investigating the crash scene. In the interim, Officer Dan Sabruno arrived to assist Officer Shum at the scene of the accident. After treatment, which lasted between 20 to 30 minutes, Dust signed a waiver declining transportation and further treatment. Once EMS technicians informed Officer Shum that Dust declined transport to the hospital, he asked Dust to exit the rescue vehicle. As Dust exited the ambulance, he stumbled off a step, and Officer Sabruno needed to stick out his hand to prevent Dust from falling. Officer Sabruno testified that, after Dust exited the ambulance, Dust had a "strong odor of alcohol on his person," and that he swayed back and forth as he stood.
 {¶ 4} Based upon these observations, Officer Shum asked Dust to perform the Horizontal Gaze Nystagmus (HGN) test. Officer Shum testified that Dust registered all six clues indicating intoxication. Officer Shum elected not to conduct the walk and turn or one-leg stand tests due to inclement weather conditions and concern that Dust might possibly injure himself further, having just been in an accident, and placed Dust under arrest for driving under the influence, in violation or R.C. 4511.19(A)(1). After transport to the police station, Dust was asked to take a breath test, and he refused.
 {¶ 5} On March 22, 2005, Dust filed a motion to suppress, alleging that the police lacked probable cause to arrest him for driving under the influence. Following a hearing, the trial court declined Dust's motion, finding that, since there was no credible medical evidence to explain Dust's failure of the HGN test, the results, along with the officers' other observations, were sufficient to establish probable cause to arrest. Dust subsequently pled no contest to the OVI charge and was subsequently convicted. Since it was Dust's third offense, he was sentenced to 45 days in jail, fined $750, and his license was suspended for three years. In addition, he was given two years probation, and ordered to attend mandatory drug and alcohol treatment.
 {¶ 6} Dust appeals the court's denial of his motion to suppress, assigning the following as error:
 {¶ 7} "The trial court erred to the prejudice of the Appellant because the facts adduced at the suppression hearing were not supported by competent and credible evidence."
 {¶ 8} An appellate court's review of the grant or denial of a motion to suppress presents a mixed question of law and fact.State v. Norman, 136 Ohio App.3d 46, 51, 1999-Ohio-961 (citation omitted). In a motion to suppress, the trial court acts as the trier of the facts and, as such, is in the best position to resolve factual issues and assess the credibility of witnesses. State v. Dohner, 11th Dist. No. 2003-P-0059,2004-Ohio-7242, at ¶ 10 (citations omitted). Thus, when considering the trial court's ruling on a motion to suppress, an appellate court is bound to accept the trial court's findings of fact as long as these findings are supported by competent and credible evidence. Id. citing State v. Searls (1997),118 Ohio App.3d 739, 741. Accordingly, this court will review a trial court's findings of fact only for clear error, and give due weight to the inferences the trial court drew from those facts. Id. "When an appeal is directed at a trial court's findings of fact, the reviewing court must determine only whether the findings were against the manifest weight of the evidence."State v. Bokesch, 11th Dist. No. 2001-P-0026, 2002-Ohio-2118, at ¶ 12. Once the trial court's factual determinations are accepted, the appellate court then conducts a de novo review of the trial court's application of the law to those facts.Dohner, 2004-Ohio-7242, at ¶ 10.
 {¶ 9} Dust argues that since police did not observe him operating the vehicle, and there were other possible explanations, besides intoxication both for the accident itself, and for his subsequent failure of the HGN test, the police lacked probable cause to arrest him for driving under the influence. We disagree.
 {¶ 10} When determining whether the police have probable cause to arrest an individual for DUI, "we consider whether, at the moment of arrest, the police had sufficient information * * * to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212, citing Beck v. Ohio (1964), 379 U.S. 89, 91. In so doing, we examine "the `totality' of facts and circumstances surrounding the arrest." Id. "[W]hile probable cause means more than bare suspicion, it means less than evidence that would justify conviction." State v. Hummel, 154 Ohio App.3d 123,2003-Ohio-4602, at ¶ 28 (citations omitted).
 {¶ 11} Generally, a police officer may not effectuate a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. State v. Lyons (Jun. 11, 1999), 11th Dist. No. 97-P-0122, 1999 Ohio App. LEXIS 2623, at *4, reversed on other grounds, Hummel, 2003-Ohio-4602, at ¶ 29. However, in some instances, an officer may legally arrest an individual for operating a vehicle under the influence, even without observing the operation of the vehicle, where the officer could reasonably conclude the driver had been operating the vehicle shortly before the officer arrives. Oregon v. Szakovits
(1972), 32 Ohio St.2d 271, 274. When evaluating the propriety of a DUI arrest when the officer has not observed the accused driving the vehicle, a court should consider the following guidelines: (1) "each `drunken driving' case is to be decided on its own particular and peculiar facts"; (2) "[c]hronology is an important element in `drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle";Lyons, 1994 Ohio App. LEXIS 2623, at *5, citing Szakovits,32 Ohio St.2d at 273, and (3) "a police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. Hummel, 2003-Ohio-4602, at ¶¶ 30.
 {¶ 12} In its judgment entry, the trial court found that, based upon the testimony at the suppression hearing, officers arrived at the scene of the accident within two minutes of being dispatched; that, upon the officer's arrival, Dust was observed in his vehicle, which had just been involved in an accident; that Dust emitted a strong odor of alcohol and had bloodshot eyes and a flushed face; that Dust almost fell when exiting the rescue vehicle and required assistance to regain his balance, and that Dust swayed back and forth as he stood. The trial court found, based upon these facts and circumstances, "Officer Shum had the authority to administer sobriety tests," and the aforementioned observations, along with Dust's failure of the HGN test, gave Officer Shum probable cause to arrest for OVI.
 {¶ 13} As appellant correctly points out, "the mere appearance of drunkenness * * * is not sufficient to constitute probable cause for arrest for driving under the influence."State v. Finch (1985), 24 Ohio App. 3d 38, at paragraph two of the syllabus. Nevertheless, "[t]he weight of authority appears to be that where a police officer comes to the scene of an accident wherein there was no observable driving, but a suspect is found in or near the automobile with an odor of an alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence." Fairfield v. Regner
(1985), 23 Ohio App.3d 79, 84; Mentor v. Woodside (Feb. 6, 1998), 11th Dist. No. 97-L-046, 1998 Ohio App. LEXIS 424, at *6. In the case sub judice, there was uncontroverted evidence that the police arrived at the scene of a single-vehicle accident within two minutes of receiving the dispatch, and upon arrival found Dust inside the wrecked vehicle which was resting on the sidewalk near the downed utility pole. Both officers testified that Dust had bloodshot eyes, a flushed face, and bore the strong odor of alcohol.
 {¶ 14} Furthermore, unlike the defendant in Finch, Officer Shum conducted the HGN test, in which Dust demonstrated all six of the clues indicating intoxication. The trial court considered the issue of the possible effect of Dust's injuries on the reliability of the HGN test, and found that although Officer Shum conceded that a concussion may effect the results of the HGN, "defendant presented no medical evidence to refute the testimony of the officer" and concluded that the injury did not impact the HGN test "so as to void any probable cause that the officer had to arrest." See Kirtland Hills v. Deir, 11th Dist. No. 2004-L-005, 2005-Ohio-1563, at ¶ 22 ("This court has held that `the actual cause of * * * [the suspect's] physical condition is only relevant to a defense to the charge. Those issues are more properly left for the trier of fact at trial to determine the relationship, if any, between [the suspect's] injuries and the conditions observed by the arresting officer'") (citation omitted). The court based this finding on the fact that Dust was able to follow the instructions of the test as given, and due to the fact that he waived further treatment at the hospital.
 {¶ 15} Accepting the trial court's factual findings as true, we conclude that under the totality of the circumstances known by Officer Shum at the time, there was sufficient probable cause to effectuate the arrest.
 {¶ 16} Dust's sole assignment of error is without merit. Accordingly, we affirm the judgment of the Willoughby Muncipal Court denying Dust's motion to suppress.
William M. O'Neill, J.
Cynthia Westcott Rice, J. concur.