OPINION
{¶ 1} Defendant-appellant, Andrew M. Kirara, appeals the denial of his Motion to Suppress and subsequent convictions for Operating a Vehicle Under the Influence of Alcohol and Failure to Control in Willoughby Municipal Court. For the following reasons, we affirm the denial of the Motion to Suppress and the convictions.
 {¶ 2} On March 4, 2006, Kirara was issued a traffic citation by Patrolman Brian Lako for Operating a Vehicle Under the Influence of Alcohol, a misdemeanor of the first degree in violation of Wickliffe Codified Ordinance 333.01(a)(1)(A), Failure to Control, a *Page 2 
minor misdemeanor in violation of Wickliffe Codified Ordinance 331.34, and Expired Plates, a minor misdemeanor in violation of Wickliffe Codified Ordinance 335.10(d). On March 8, 2006, Kirara appeared for arraignment and pled not guilty to all charges.
 {¶ 3} On April 13, 2006, Kirara filed a Motion to Suppress. On May 24, 2006, the court held a hearing on Kirara's motion.
 {¶ 4} At this hearing, Patrolman Lako testified that, at 2:19 a.m. on March 4, 2006, he was driving westbound on Euclid Avenue. In front of a house near East 289th Street, Lako noticed a vehicle's brake lights turn off. The car was parked at an angle to the street with half of the vehicle on the driveway. As Lako passed the vehicle, he noticed a person seated in the vehicle, heavy front-end damage on the passenger's side of the vehicle, and a telephone pole with a "big gouge" in it a few feet in front of the vehicle.
 {¶ 5} Lako parked his patrol car and approached the driver's side of the vehicle. Kirara was seated in the driver's seat fumbling with a cell phone. Lako knocked on the window and Kirara opened the door and exited the vehicle. Lako testified that Kirara "was just confused" and "didn't say much." Although Kirara exited the vehicle by himself, he was "staggering" and "wobbly." Lako smelled alcohol on Kirara's breath and observed that Kirara had "watery, bloodshot eyes" and slurred speech.
 {¶ 6} Lako asked Kirara where he was coming from and Kirara replied that he was coming from work. Lako asked Kirara what time he got off work and Kirara replied at five o'clock. Lako asked Kirara if he needed an ambulance and Kirara replied "no."
 {¶ 7} Lako then attempted to perform the horizontal gaze nystagmus test but could not complete the test because Kirara was unable to follow the stimulus with his *Page 3 
gaze. Lako testified that the more alcohol a person has consumed, the more difficulty they have following the stimulus. At this point, Lako placed Kirara under arrest.
 {¶ 8} On cross-examination, Lako testified that he did not observe steam coming from the radiator or the engine of Kirara's vehicle or other indications that the vehicle was recently operated. Lako also noted that the passenger's side door was heavily damaged. Defense counsel also elicited from Lako that Kirara's inability to track equally may have been a result of injury sustained during the accident.[1]
 {¶ 9} The municipal court denied Kirara's Motion to Dismiss.
 {¶ 10} On June 22, 2006, a bench trial was held after which Kirara was found guilty of Operating a Vehicle While Under the Influence of Alcohol and Failure to Control. Lako's testimony at trial was essentially the same as at the suppression hearing. However, at trial, Lako testified that he did observe steam coming from the radiator upon approaching Kirara's vehicle and that his testimony to the contrary at the suppression hearing was incorrect. Lako also testified at trial that he never observed Kirara with the keys to the vehicle.
 {¶ 11} Kirara timely appeals and raises the following assignments of error:
 {¶ 12} "[1.] The trial court erred to the prejudice of defendant-appellant by failing to grant his motion to suppress in violation of his rights pursuant to the Fourth, Fifth andFourteenth Amendments to the United States Constitution and Sections 10, 14 and 16, Article I of the Ohio Constitution. *Page 4 
 {¶ 13} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."Kirtland Hills v. Deir, 11th Dist. No. 2004-L-005, 2005-Ohio-1563, at ¶ 14 (citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Deir, 2005-Ohio-1563, at ¶ 14
(citations omitted); Mayl, 2005-Ohio-4629, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 15} "In determining whether the police had probable cause to arrest an individual for DUI," the reviewing court must consider "whether, at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. * * * In making this determination, [the court] will examine the `totality' of facts and circumstances surrounding the arrest." State v. Homan, 89 Ohio St.3d 421, 427,2000-Ohio-212 (citations omitted).
 {¶ 16} In a criminal prosecution relating to driving while under the influence of alcohol, an "officer may testify concerning the results of [a] field sobriety test," "if it is shown by clear and convincing evidence that the officer administered the test in *Page 5 
substantial compliance with the testing standards * * * in effect at the time the tests were administered." R.C. 4511.19(D)(4)(b).
 {¶ 17} However, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, at syllabus. The "courts have recognized that `to prove impaired driving ability, the state can rely on physiological factors (e.g., slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired.'" Id. at ¶ 12, citing State v. Wargo (Oct. 31, 1997), 11th Dist. No. 96-T-5528, 1997 Ohio App. LEXIS 4846, at *7.
 {¶ 18} Kirara raises two arguments under his first assignment of error. The first is that the trial court should have suppressed the results of the horizontal gaze nystagmus test, since the State presented no testimony that Lako administered the test in conformity with the standards set forth by the National Highway Traffic Safety Administration.
 {¶ 19} We reject this argument for the following reasons. Lako never testified as to the results of the horizontal gaze nystagmus test because Kirara was unable to follow the stimulus with his eyes. Thus, Lako was unable to make any determination regarding the presence or absence of nystagmus. Moreover, the observation that Kirara was unable to focus steadily on the stimulus is the sort of physiological factor about which Lako may testify under Schmitt.
 {¶ 20} Kirara's argument also fails because the municipal court did not rely on Lako's efforts to conduct the horizontal gaze nystagmus test in denying Kirara's motion to suppress. In its judgment entry, the court held that, under the totality of the *Page 6 
circumstances, "including] that hour of the day, the fact of the accident, the fact that no other person was present, that the Defendant was found behind the steering wheel, was wobbly, appeared to have slurred speech, bloodshot eyes and, importantly, the odor of alcohol," Lako had probable cause to arrest Kirara for driving under the influence. There is no indication that the trial court relied on Lako's aborted attempt to perform the horizontal gaze nystagmus test. "Where a trial court makes a valid probable cause determination without recourse to field sobriety tests, the manner and method of administering the tests used by the arresting officer is inconsequential." State v.Economos, 11th Dist. No. 2004-T-0124, 2005-Ohio-5605, at ¶ 13
(dismissing as moot an appeal of a denial of a motion to suppress where the trial court did not rely upon the results of the field sobriety tests).
 {¶ 21} Kirara also argues that the totality of the circumstances does not support a finding of probable cause. Again, we disagree. This court has repeatedly found that probable cause exists to arrest for driving under the influence of alcohol under circumstances similar to these.State v. Foster, 11th Dist. No. 2004-L-201, 2005-Ohio-6074, at ¶ 20
(odor of alcohol, bloodshot eyes, erratic driving, use of credit card for identification); Deir, 2005-Ohio-1563, at ¶¶ 16-18 (odor of alcohol, red and bloodshot eyes, slurred speech, inability to complete field sobriety tests); Willoughby Hills v. Lynch, 11th Dist. No. 2002-L-177,2004-Ohio-5014, at ¶ 18 (odor of alcohol, bloodshot eyes, slurred speech, unable to balance, driving without headlights); State v.Hummel, 154 Ohio App.3d 123, 2003-Ohio-4602, at ¶ 34 (single vehicle accident, odor of alcohol, glassy eyes, slurred speech); cf.Homan, 89 Ohio St.3d at 427 (erratic driving, odor of alcohol, red and glassy eyes, admission of having consumed alcohol).
 {¶ 22} The first assignment of error is without merit. *Page 7 
 {¶ 23} Under the second assignment of error, Kirara argues that his conviction for Operating a Vehicle Under the Influence of Alcohol is against the manifest weight of the evidence.
 {¶ 24} A challenge to the manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence * * * and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony."Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 42. "The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring opinion).
 {¶ 25} In order to convict Kirara for Operating a Vehicle Under the Influence of Alcohol, the State was required to prove, beyond a reasonable doubt, that Kirara operated a vehicle within Wickliffe while "under the influence of alcohol." Wickliffe Codified Ordinance 333.01(a)(1)(A).
 {¶ 26} Kirara maintains that the evidence at trial was insufficient to prove that he was operating a vehicle and that he was under the influence of alcohol. We disagree.
 {¶ 27} The fact that Lako did not observe Kirara actually operating the vehicle does not preclude the trier of fact from inferring that Kirara did so from the circumstantial *Page 8 
evidence presented at trial. "[A]n officer may legally arrest an individual for operating a vehicle under the influence, even without observing the operation of the vehicle, where the officer could reasonably conclude the driver had been operating the vehicle shortly before the officer arrives." Wickliffe v. Dust, 11th Dist. No. 2006-Ohio-2017, at ¶ 11, citing Oregon v. Szakovits (1972),32 Ohio St.2d 271, 274.
 {¶ 28} In the present case, Lako testified that he observed the brake lights of the vehicle Kirara was occupying shut off when he first observed the vehicle. Lako further testified that Kirara was behind the steering wheel and that steam was coming from the radiator of the vehicle, although this latter detail contradicted Lako's suppression hearing testimony. More significantly, Lako asked Kirara where he was coming from and Kirara answered from work, thus implying that Kirara was operating the vehicle. There is nothing unreasonable about the conclusion that Kirara was operating the vehicle in question based on this testimony. See id. at ¶ 12 (officer arrived at the scene of a single-car accident within two minutes of receiving the dispatch and found the defendant behind the wheel); Hummel, 2003-Ohio-4602, at ¶ 33
(defendant's admission that there were no passengers on the motorcycle constitutes a tacit admission of operating the motorcycle) (citation omitted); State v. McKivigan (Jan. 27, 1989), 11th Dist. No. 1905, 1989 Ohio App. LEXIS 263, at *6 ("Upon approaching the automobile [the officer] observed the appellant sitting in the driver's seat. The officer inquired if there was a problem, and appellant responded that he had run out of gas. While this answer is not tantamount to an express admission of driving, the fact that the colloquy between the trooper and the appellant did not reveal an alternate driver would permit a reasonable man to conclude that appellant was the driver of the automobile."). *Page 9 
 {¶ 29} Finally, the determination that Kirara was under the influence of alcohol is reasonable based on the fact of the accident and Kirara's condition at the time, i.e. slurred speech, inability to balance, bloodshot eyes, odor of alcohol, and disorientation. Although other factors, such as a foreign accent and injuries suffered in the accident, might account for Kirara's condition, we must defer to the trial court's determination of conflicting evidence. The trial court's determination is not against the manifest weight of the evidence.
 {¶ 30} The second assignment of error is without merit.
 {¶ 31} For the foregoing reasons, the judgment of the Willoughby Municipal Court, denying Kirara's motion to suppress and finding him guilty of Operating a Vehicle Under the Influence of Alcohol, is affirmed.
WILLIAM M. O'NEILL, J., concurs,
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.
[1] "Tracking" refers to the ability to focus both eyes on a given point. Lako's testimony on direct examination was that Kirara could not follow the stimulus, not that Kirara could not track his eyes equally. On cross-examination, Lako continued to testify that Kirara could not follow the stimulus, although defense counsel characterized Lako's testimony as being that Kirara could not track equally. For example, defense counsel asked Lako, "[Kirara] couldn't track his eyes equally, correct?" Lako replied, "Correct. He couldn't follow."